UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 12-12198-PBS |
| BERNARD A. KANSKY, et al., | ) ) ) | |
| Defendants. | ) ) | |

REPORT AND RECOMMENDATION ON
CROSS MOTIONS FOR SUMMARY JUDGMENT

October 15, 2013

SOROKIN, C.M.J.

In this action, the government seeks to reduce to judgment more than $200,000 in alleged federal income tax liabilities of defendant Bernard A. Kansky, and to enforce related federal tax liens via judicial sale of two properties in which Kansky has an ownership interest. See generally Doc. No. 1. Pending are the United States of America's Motion for Summary Judgment, its supporting brief and exhibits, Doc. Nos. 48, 49; the Motion of the Defendants[1] for Summary Judgment, Jointly and Severally, and a supporting memorandum, Doc. Nos. 50, 51; and the government's opposition to the defendants' motion, Doc. No. 52. For the reasons that follow, I respectfully recommend the government's motion be ALLOWED, the defendants'

---

[1] The pending summary judgment motion was filed by Kansky on behalf of himself, his wife, and two real estate trusts named as defendants in this action.

motion be DENIED,[2] and that judgment be entered in the government's favor as more fully set forth below.

I.  UNDISPUTED FACTS

   A.  Local Rule 56.1

Neither Kansky's motion nor his supporting brief contains "a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation," as required by Local Rule 56.1. Indeed, Kansky has submitted no evidence, via affidavits or other exhibits, to support his motion, nor has he cited any portions of the record offered by the government in support of its motion.[3]  See generally Doc. No. 51. This failure alone "constitutes grounds for denial of [Kansky's] motion" under the Local Rules.

Furthermore, although Kansky has cross-moved for summary judgment, he has not separately opposed the government's motion, and the deadline for doing so has passed. See Doc. No. 41 (requiring opposition briefs by September 23, 2013, and reply briefs by October 7, 2013). To the extent that Kansky's motion and related memorandum also are intended to serve as his opposition to the government's motion (which was filed three days earlier), they lack "a concise statement of the material facts of record as to which it is contended that there exists a genuine

---

[2]To the extent Kansky's motion seeks entry of judgment on his counterclaim against the government, the counterclaim has been dismissed and his motion is moot. See Doc. Nos. 54, 58.

[3]Kansky's only reference to the government's evidence is to suggest that the "hundreds of pages of documents and exhibits" submitted in support of the government's motion somehow necessitate oral argument. Doc. No. 51 at 7. It is precisely because the government provided ample documentary support for its motion – and because Kansky has offered nothing to counter that evidence – that oral argument is unnecessary here.

issue to be tried, with page references to affidavits, depositions and other documentation," as required by Local Rule 56.1. Pursuant to the same Local Rule, this omission renders the government's statement of facts admitted for purposes of its pending motion. Nonetheless, in making this Report and Recommendation, the Court has considered the conclusory averments contained in Kansky's papers and has carefully and independently reviewed the exhibits submitted by the government in support of its motion to assess whether entry of summary judgment is appropriate.

    B.    The Facts

Kansky is a practicing attorney with a Masters of Law in taxation from Boston University. Doc. No. 48 at ¶ 1. He has no retirement or investment accounts. Id. at ¶ 3. His assets are primarily represented by the following real estate: 1) a home in Needham, Massachusetts, where he lives with his wife; 2) a vacation property in Hull, Massachusetts, owned by his wife; 3) a rental property located at 15 N Street in Hull, Massachusetts, owned by the KEM Realty Trust of 1978 (of which Kansky is the sole trustee); and 4) a building located at 468 Commercial Street in Boston, Massachusetts, which houses Kansky's law office and two apartments rented to tenants, and which is owned by the KEM Realty Trust of 1984 (of which Kansky is the sole trustee). Id. at ¶¶ 2, 3, 11, 14, 16, 21, 24.

Kansky's wife is the "successor trustee" of each trust, and his step-daughter and son are the beneficiaries. Id. at ¶¶ 11, 21. The documents creating the trusts grant Kansky the broad power to "alter[], amend[], or revoke[]" the trusts "at any time during his lifetime." Id. at ¶¶ 13, 23. Revocation of the trusts would result in "all of the income and principal of the trust fund . . . revert[ing] to and becom[ing] payable to" Kansky. Id. Kansky does not pay rent to the 1984

Trust in exchange for his use of part of the Commercial Street property as a law office. Id. at ¶ 29. Neither trust has a bank account. Id. at ¶ 33. When Kansky collects rent from tenants in the N Street property and the Commercial Street property, he deposits the checks into his business account or gives the proceeds to his wife to use for family expenses. Id. He does not keep an accounting of his use and distribution of such proceeds. Id. at ¶ 34.

Between November 30, 1998 and February 6, 2012, the Internal Revenue Service ("IRS") assessed $211,084.53 in unpaid income tax liabilities, including related penalties and fees, against Kansky for taxable years 1990, 1991, 1997, 1998, 2000, 2001, 2005, 2006, and 2008.[4] Id. at ¶ 4 (listing assessment dates and amounts for each year); see Doc. No. 48-1 (containing Certificates of Assessment for each year). Contemporaneous notices of each assessment and demands for payment were sent to Kansky, who failed to remit the required payments. Doc. No. 48 at ¶¶ 5, 6.

Kansky's tax problems apparently began when he failed to file federal income tax returns for tax years 1987 through 1991. See Kansky v. Comm'r of Internal Revenue, 93 T.C.M. (CCH) 921 (T.C. 2007). As a result, he was audited – a process which took several years to complete due, in part, to Kansky's lack of cooperation, and which generated multiple proceedings in United States Tax Court. Id. Although he filed tax returns in subsequent years, he "failed to fully pay the liabilities shown on [many of] those returns." Id. Decisions by the Tax Court resolved the amounts of deficiencies for 1987 through 1991, rejected various challenges by Kansky to the IRS's collection actions through 2007, and upheld the IRS's decision not to abate

---

[4] Although the government's complaint originally included alleged liability for 2009, that year has been eliminated from this action based on a pending matter in Tax Court. See Doc. No. 37.

the interest due.  Id.

Each assessment by the IRS gave rise to a statutory lien in favor of the government upon "all property and rights to property, whether real or personal," belonging to Kansky.  26 U.S.C. §§ 6321, 6322.  The government filed notices of its liens with the registries of deeds in Plymouth and Suffolk Counties in July 2008 (for all relevant years except 2008), with additional notices thereafter (for all years at issue).  Doc. Nos. 48-5, 48-6.  Corresponding notices also were filed naming both KEM Trusts as Kansky's nominees.  Doc. Nos. 48-7, 48-8.  As of August 16, 2013, Kansky owed the government a total of $211,084.53, including interest and other statutory additions.  Doc. No. 48 at ¶ 6.

The government filed this action in November 2012 pursuant to 26 U.S.C. §§ 7401 and 7403, seeking to reduce the assessments for Kansky's unpaid federal income taxes to judgment and to foreclose the tax liens on the N Street property and the Commercial Street property.  Doc. No. 1.  The following parties were named as defendants: Kansky, his wife, the two KEM Trusts, the Town of Hull, the City of Boston, Mortgage Electronic Registration Systems, Inc. ("MERS"), and Wells Fargo Bank, N.A.[5]  Id.  Neither MERS nor Wells Fargo answered the complaint, causing the Court to enter a default judgment against them.  See Doc. No. 30 (entering judgment and ordering that neither MERS nor Wells Fargo has any claim or interest in either property at issue).  Although the Town of Hull and the City of Boston answered the complaint, Doc. Nos. 11, 12, neither has taken a position with respect to the pending motions,

---

[5]Contrary to Kansky's apparent belief, the government has not alleged his wife "owes any money to the IRS."  Doc. No. 51 at ¶ 2; see also id. at ¶ 10.  She is a defendant here because the government had reason to believe she held a security interest – in the form of a mortgage lien – in the Commercial Street property.  Doc. No. 52 at 3.

and it appears there presently are no property tax liens at issue. See Doc. No. 52 at 3-4.

Kansky answered the complaint on his own behalf and on behalf of his wife and the two KEM Trusts. Doc. No. 17. On August 23, 2013, after the close of discovery, the government moved for summary judgment. Doc. No. 48. Three days later, Kansky moved for summary judgment on behalf of himself, his wife, and the two trusts. Doc. No. 50.

## II. LEGAL STANDARDS[6]

### A. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); accord Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995). The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009).

"There must be sufficient evidence favoring the nonmoving party for a [factfinder] to return a verdict for that party. If the evidence is merely colorable or is not significantly

---

[6]Kansky's submissions address neither the well-known standard governing summary judgment motions, nor the legal principles applicable to federal income tax liens under the Internal Revenue Code. See generally Doc. No. 51.

probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

"Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). For a factual dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements, Inc., 43 F.3d at 735 (internal citation omitted).

  B. Tax Liens

Pursuant to the Internal Revenue Code:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. The lien typically arises "at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied . . . ." Id. § 6322. However, such a lien against real property is valid "as against any . . . holder of a security interest" in the property only after notice of the lien has been filed with the appropriate state office (here, the county register of deeds). Id. § 6323(a), (f)(1)(A)(i). Generally, however, federal tax liens are inferior to local property tax liens. Id. § 6323(b)(6).

  The government is empowered to enforce its tax liens in various ways, including by filing suit in federal court. Id. § 7403(a). By filing a civil action pursuant to this provision, the

government may seek "to subject any property, of whatever nature, of the delinquent [taxpayer], or in which he has any right, title, or interest, to the payment of [his unpaid] tax or liability." Id. § 7403(a). "All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." Id. § 7403(b). The federal courts are then empowered "to adjudicate all matters involved [in the action] and finally determine the merits of all claims to and liens upon the property," and to order a sale of the property and distribution of proceeds based on the court's findings regarding the parties' interests in the property. Id. § 7403(c); see also id. § 7402(a) (vesting jurisdiction over such actions in the federal district courts).

III.   DISCUSSION

Kansky apparently disputes whether the government has established that he "owed any sum of money" to the government, or that he was notified of any tax assessments. See Doc. No. 51 at ¶ 9. The government, however, has submitted official Certificates of Assessment corresponding to each tax year for which it claims a delinquency and a related lien. See Doc. No. 48-1. Each Certificate lists assessments of tax deficiencies, penalties, and interest for a specific tax year, as well as any payments, and reflects the dates of all relevant events, including the mailing of statutory notices of "balance due" and "intent to levy." See id. The Certificates are corroborated – at least as to the amounts outstanding for each relevant year – by a declaration executed by an IRS Advisor. Doc. No. 48-4. Certificates of Assessment are "presumptive proof of a valid assessment." Geiselman v. United States, 961 F.2d 1, 6 (1st Cir. 1992) (internal quotations and citations omitted); accord In re Maali, 432 B.R. 348, 353 n.3 (Bankr. D. Mass. 2010). They likewise constitute "presumptive proof that the IRS gave notice

of the assessments and made demands for payment." Geiselman, 961 F.2d at 6.

Absent evidence that the assessments were not made, were not valid, or were not conveyed to Kansky, there can be no genuine dispute regarding the existence or validity of the relevant tax liabilities. See id. Kansky has offered no such proof here. Thus, pursuant to 26 U.S.C. §§ 6321 and 6322, federal tax liens arose on the dates of the relevant assessments – i.e., as early as November 30, 1998, and no later than September 21, 2009, Doc. No. 48-1 at 19, 59 – and attached to "all property and rights to property, whether real or personal" belonging to Kansky.

Next, Kansky seems to contend that the two properties at issue are not subject to the tax liens because they are owned by the KEM Trusts.[7] See Doc. No. 51 at ¶¶ 10, 14. He is wrong. State law controls questions regarding the existence and scope of a taxpayer's property rights for purposes of the tax code. Markham v. Fay, 74 F.3d 1347, 1355-56 (1st Cir. 1996) (citing United States v. Bess, 357 U.S. 51, 55 (1958)). In Massachusetts, "where a person places property in trust and reserves the right to amend and revoke, or to direct disposition of principal and income, the settlor's creditors" may reach trust assets. State St. Bank & Trust Co. v. Reiser, 389 N.E.2d 768, 771 (Mass. App. Ct. 1979); see Markham, 74 F.3d at 1358-59. The trust documents here reserve just such broad powers to Kansky, as the sole trustee of both trusts. Not only is he empowered to unilaterally alter, amend, or revoke either trust "at any time during his lifetime," he has "complete and absolute discretion" regarding whether, when, and in what amounts to distribute trust income while the trusts remain in effect. See Doc. No. 48-9 at 7-8; Doc. No. 48-

---

[7]This is, perhaps, a generous interpretation of Kansky's submission, but the Court will consider the issue in an abundance of caution.

12 at 7-9. As the First Circuit has recognized, such broad powers mean that the rights of the trusts' beneficiaries have not vested, render the trusts' assets Kansky's own property under Massachusetts law, and expose the N Street and Commercial Street properties to the government's federal tax liens.[8] See Markham, 74 F.3d at 1358-60.

Because the two properties at issue are subject to the government's liens, this Court may order their judicial sale. See 26 U.S.C. § 7403(c). The only remaining question is how the proceeds of such sales should be distributed.[9] No party has appeared asserting any security interests or other claims to either property that might compete with the government's tax liens. To the extent Kansky's wife ever held a mortgage on the Commercial Street property, see Doc. No. 48-14, she has not pursued her claim here by demonstrating the continued existence or amount of her interest, see Doc. No. 48-3 at 12 (reflecting Mrs. Kansky's unequivocal denial that she holds any interest in the property or would expect to receive any payment if the property were sold). The only other possible interests at stake are those of the local taxing authorities, in the event that Kansky has ceased paying taxes while this motion was pending (or does so before

---

[8]In addition, the government has offered substantial grounds for finding the KEM Trusts operate as Kansky's nominees, such as Kansky's failure to maintain separate bank accounts for the trusts, maintain records of distributions, pay rent for his use of trust property as his law office, or segregate rents paid to the trusts from his own personal funds – facts which all are corroborated by Kansky's deposition testimony. See generally Doc. No. 48-2. The Court need not resolve the nominee question, though, in light of the plain language of the trust documents and its inescapable effect under Massachusetts law.

[9]Two other arguments advanced by Kansky warrant only brief mention. He claims that the IRS misapplied installment payments he made more than a decade ago, and he summarily challenges the manner in which the assessments were levied and the audit performed. See Doc. No. 51 at ¶¶ 7, 11. These assertions are without a shred of support in the record before this Court, and were previously considered and rejected by the Tax Court. See Kansky, 93 T.C.M. (CCH) 921.


a judicial sale is effected). Such property tax liens, should they exist at the time of the sale, will supersede the government's federal tax liens. 26 U.S.C. § 6323(b)(6). Finally, after paying the costs of the sale, then satisfying any property tax liens and the government's federal tax liens, any remaining proceeds from either sale will revert to the KEM Trust associated with the relevant property.

Accordingly, as a matter of law and in light of Kansky's failure to comply with the Local Rules or to proffer even the slightest evidence to dispute the record submitted by the government, the government is entitled to entry of judgment in its favor, in the manner set forth below.

## IV. CONCLUSION

For the foregoing reasons, I recommend the government's Motion for Summary Judgment (Doc. No. 48) be ALLOWED, the defendants' Motion for Summary Judgment (Doc. No. 50) be DENIED, and judgment be ENTERED as follows:[10]

1. The government holds valid and subsisting federal tax liens associated with the unpaid federal income taxes, penalties, and interest, owed by the defendant

---

[10]The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72; 28 U.S.C. § 636(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).

      Bernard A. Kansky for taxable years 1990, 1991, 1997, 1998, 2000, 2001, 2005, 2006, and 2008, in the amount of $211,084.53, plus statutory additions accruing from and after August 16, 2013, including interest pursuant to 26 U.S.C. §§ 6601, 6621, 6622, and 28 U.S.C. § 1961(c);

2. Those federal tax liens are hereby reduced to judgment, and they attach to all property and rights to property belonging to Bernard A. Kansky;

3. The N Street property (as described in Doc. No. 48-10) is owned by the KEM Realty Trust of 1978, of which Bernard A. Kansky is the sole trustee;

4. Because Bernard A. Kansky is empowered to unilaterally alter, amend, or revoke the KEM Realty Trust of 1978 at any time, Massachusetts law provides that trust property – specifically, the N Street property – is subject to the claims of Bernard A. Kansky's creditors and, therefore, the government's tax liens have attached to such real property;

5. The Commercial Street property (as described in Doc. No. 48-13) is owned by the KEM Realty Trust of 1984, of which Bernard A. Kansky is the sole trustee;

6. Because Bernard A. Kansky is empowered to unilaterally alter, amend, or revoke the KEM Realty Trust of 1984 at any time, Massachusetts law provides that trust property – specifically, the Commercial Street property – is subject to the claims of Bernard A. Kansky's creditors and, therefore, the government's tax liens have attached to such real property;

7. Based on their failure to appear in this action to demonstrate the validity and amount of any liens, defendants MERS and Wells Fargo have no rights, titles,

claims, liens, and/or interests in either property or in the proceeds from the judicial sales of the properties;

8. Based on her failure to assert or demonstrate the validity and amount of any lien in her favor, defendant Gail Kansky has forfeited her right to object to a judicial sale of either the N Street or Commercial Street property or to the distribution of the proceeds of the sale(s) in the manner set forth below;

9. The government's tax liens shall be enforced pursuant to 26 U.S.C. §§ 7402(a) and 7403(c), through the judicial sale of the entire N Street and/or Commercial Street properties, without any right of redemption and free and clear of all rights titles, liens, claims, and interests of the parties hereto;

10. The proceeds of the judicial sale of the N Street property shall be distributed as follows: *first*, for the expenses of the sale, including any expenses incurred and paid to secure or maintain the property; *second*, to the Town of Hull, in accordance with 26 U.S.C. § 6323(b)(6), for any reasonable and valid real property tax or other municipal assessments against the property that may be outstanding, unpaid, and owing to the Town at the time of the sale; *third*, to the government for the taxes, penalties, and interest owed by Bernard A. Kansky for taxable years 1990, 1991, 1997, 1998, 2000, 2001, 2005, 2006, and 2008, as set forth above; and *fourth*, the remainder, if any, to the KEM Realty Trust of 1978;

11. The proceeds of a judicial sale of the Commercial Street property should be distributed as follows: *first*, for the expenses of the sale, including any expenses incurred and paid to secure or maintain the property; *second*, to the City of

Boston, in accordance with 26 U.S.C. § 6323(b)(6), for any reasonable and valid real property tax or other municipal assessments against the property that may be outstanding, unpaid, and owing to the City at the time of the sale; *third*, to the government for the taxes, penalties, and interest owed by Bernard A. Kansky for taxable years 1990, 1991, 1997, 1998, 2000, 2001, 2005, 2006, and 2008, as set forth above; and *fourth*, the remainder, if any, to the KEM Realty Trust of 1984.

      /s/ Leo T. Sorokin
Leo T. Sorokin
Chief U.S. Magistrate Judge